UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BROWN SHOE COMPANY INC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. M-07-234 |
| | § | |
| COMMERCIAL CREDIT COUNSELING | § | |
| SERVICES, INC. DBA CORPORATE | § | |
| TURNAROUND, *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE
FIRST AMENDED COMPLAINT**

**I.     Factual and Procedural Background**

Now before the Court for consideration is Plaintiff's Motion for Leave to File First Amended Complaint. (Doc. 27). Plaintiff Brown Shoe Company, Inc. ("Brown Shoe") originally filed suit against Defendants Commercial Credit Counseling Services, Inc., dba Corporate Turnaround ("CT") and Schuhz and Company, LLC, d/b/a Westies Fashion Footwear ("Westies") on August 2, 2007 in the 332nd Judicial District Court, Hidalgo County, Texas. (Doc. 1, Ex. A-1). As set forth in Plaintiff's Original Class Action Petition, Plaintiff seeks to represent a class of entities that are now or have been at any time since July 17, 2003, creditors of Texas debtors that have executed a blanket security agreement in favor of CT, and for which CT has filed a Uniform Commercial Code ("UCC") Financing Statement with the Texas Secretary of State. *Id.* at 5. Plaintiff alleges that CT, a corporation offering credit counseling and debt relief services to business entities, mainly by formulating restructured debt plans, employs a fraudulent and illegal scheme in its effort to protect its clients' assets from creditors. *Id.* at 2-3. As

part of this scheme, CT enters into a contract with each of its clients to provide services that include the execution of a blanket security agreement in favor of CT.  *Id.* at 3.  CT then files a UCC Financing Statement with the Texas Secretary of State.  *Id.*  CT's clients facilitate the shielding of their assets by periodically turning over all or substantially all of their cash collateral to CT.  *Id.*  CT then attempts to shield its clients' assets by claiming against creditors a superior right to such collateral by virtue of its financing statement.  *Id.*  According to Plaintiff, the above-described scheme is illegal under the Texas Uniform Fraudulent Transfer Act, TEX. BUS. & COM. CODE § 24.001 *et. seq.* ("TUFTA"), because it is intended to hinder and delay creditors from exercising their rights as to such collateral, and because CT gives the consideration of an unperformed promise in order to receive the financing statement and control over the collateral.  *Id.* Plaintiff claims that such consideration is also not reasonably equivalent in value in comparison to what is received, and that the scheme leaves CT's clients with little or no cash collateral from which they can pay creditors as their obligations become due.  *Id.* Plaintiff further alleges that in or around September 2005, Defendant Westies purchased and received product from Plaintiff and incurred a debt to Plaintiff in the amount of $1,706.95.  *Id.*  Plaintiff alleges upon information and belief that Westies contracted with CT "to deal with this and other debts" in the manner described above.  *Id.* at 4.  On October 10, 2006, CT filed a UCC Financing Statement with the Texas Secretary of State concerning the assets of Westies.  *Id.*

Pursuant to the Texas Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE § 37.001 *et seq.* and TUFTA, Plaintiff and the class it seeks to represent request declaratory relief in the form of a judicial determination that UCC Financing

Statements filed by CT on behalf of Westies and other Texas debtors under the same or similar circumstances violate TUFTA and are therefore void. *Id.* at 7. Accordingly, Plaintiff and the putative class request avoidance of the transfer of money or other consideration from debtors to CT and an order requiring CT to disgorge any monies received by it to the extent necessary to fully satisfy the creditor claims of the class. *Id.* Plaintiff further requests preliminary and permanent injunctive relief in order to prohibit CT from (1) entering into any further contracts with any other person or entity to secure a financing statement in which CT offers for lawful value the promise of future performance; (2) filing any UCC Financing Statement for which the right to file was obtained in exchange of the promise of future performance; and (3) representing to any third parties that any UCC Financing Statement obtained in exchange of the promise of future performance is valid or has priority over any other rights or interests of any third party. *Id.* Furthermore, Plaintiff and the class it seeks to represent request equitable relief in the form of an order requiring CT, at its own expense, to notify all creditors in the putative class of its unlawful conduct, including the fact that its UCC Financing Statements are void and have no legal effect. *Id.* at 8. Plaintiff and the putative class also request damages in the form of the disgorgement of any and all monies or revenue obtained by CT through its allegedly illegal and fraudulent practices. *Id.* Furthermore, Plaintiff brings suit in its individual capacity under the legal theories of breach of contract, suit on account, and quantum meruit, to recover from Defendant Westies the sums owed. *Id.* Finally, Plaintiff and the putative class seek the recovery of reasonable and necessary attorneys' fees from Defendants, jointly and severally, in pursuing this action. *Id.*

On September 9, 2007, CT removed the case to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332, 1446, and 1453. (Doc. 1).[1] Under CAFA, district courts have original jurisdiction over any civil action in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs,[2] and is a class action involving 100 or more potential class members in which any member of the class of plaintiffs is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d)(2)(A), (d)(5). A class action may be removed to a district court pursuant to 28 U.S.C. § 1446 without regard to whether any defendant is a citizen of the State in which the action is brought. 28 U.S.C. § 1453(b). In its Motion to Remand, Plaintiff contended that CT could not meet its burden to show that the number of class members and the amount in controversy satisfied the threshold requirements. (Doc. 7). At the initial pretrial and scheduling conference held on November 7, 2007, the Court orally denied Plaintiff's motion, finding that the record available to the Court demonstrated that CT had met its burden.

Also at the initial conference, the Court addressed CT's Amended Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and, in the alternative, for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 5). According to CT, Plaintiff's petition is subject to dismissal under Rule 12(b)(1) because it cannot satisfy the requirements for standing under Article III, § 2 of the U.S. Constitution. *Id.* In

---

[1] In the alternative, CT claimed that the Court has diversity jurisdiction over the action pursuant to 28 U.S.C. §§ 1332(a)(1), 1367, and 1446. (Doc. 1). However, CT appeared to abandon this contention and, in any event, the Court need not address it. (Doc. 14).
[2] CAFA allows the aggregation of each class member's claim to determine the amount in controversy. 28 U.S.C. § 1332(d)(6).

support of this argument, CT contends that Plaintiff has not suffered the requisite injury in fact because it fails to allege that it took any action, refrained from any action, or suffered any damages on the basis of CT's taking of a security interest in Defendant Westies' assets. *Id.* CT also claims that Plaintiff cannot show a causal connection between any alleged harm suffered by Plaintiff and the actions of CT itself. *Id.* According to CT, Plaintiff's petition "stops far short of alleging that [CT] proximately caused Plaintiff's inability to collect its debt [from Westies] or that Plaintiff is even unable to collect its debt," nor does it allege that Plaintiff modified its conduct in any way as a result of the Westies security interest. *Id.* CT further claims that Plaintiff's failure to allege any injury defeats the requirement that Plaintiff show the likelihood of redressability of injury should the Court render a decision in favor of Plaintiff. *Id.* In the alternative, CT moves for the dismissal of Plaintiff's TUFTA claim pursuant to Rule 12(b)(6) on the grounds that Plaintiff's petition fails to allege an essential element of that claim—that is, that Plaintiff suffered damages as a result of CT's actions. *Id.*

In its briefing in response to CT's Motion to Dismiss, Plaintiff expressed a willingness to amend its pleading to address the alleged deficiencies. (Docs. 6, 19). Therefore, the Court stated on the record its intention to allow Plaintiff to file its amended pleading by November 26, 2007. In addition, the Court directed that the amended complaint would not serve to moot CT's pending Motion to Dismiss; rather, the Court would allow CT to supplement its motion, if necessary, to respond to the amended pleading. The Court further indicated its intention to hold a hearing on the Motion to Dismiss subsequent to the filing of the amended complaint and any supplemental briefing filed thereafter.

The parties informed the Court, both in the Joint Discovery/Case Management Plan filed prior to the initial conference and on the record, of their disagreement regarding the scope of discovery. (Doc. 18). CT sought to bifurcate discovery into facts relevant to a class certification decision and facts relevant to the merits of the action. *Id.* Plaintiff, however, requested a single discovery period, given that "much of the discovery will touch upon issues pertaining to both…class certification and the substantive merits…." *Id.* CT further expressed its concern that any pre-class certification discovery leading to the disclosure of the identities of putative class members would allow Plaintiff to "shop" for new class representatives in an effort to defeat CT's asserted grounds for dismissal. *See id.* On the record, the Court encouraged the parties to attempt to agree on a discovery plan and, if necessary, a protective order regarding certain confidential information, or seek ruling from the Court. In the meantime, the Court would allow the parties to proceed with discovery insofar as it pertained to CT's Motion to Dismiss.

Plaintiff failed to replead by November 26, 2007, the deadline set by the Court for amendment. On December 10, 2007 and December 21, 2007, CT filed a Motion for Extension of Time to Respond to Plaintiff's Request for Production and a Motion for Extension of Time to Respond to Plaintiff's Interrogatories, respectively. (Docs. 23, 24). In those motions, CT represented that Plaintiff's requests for discovery were not limited to issues of class certification or CT's pending Motion to Dismiss. *Id.* Rather, Plaintiff sought discovery on the merits, including the identity of potential class members and privileged and/or confidential documents. *Id.* According to CT, Plaintiff's counsel had stated that he needed CT's documents in response to the requests for production in order to amend Plaintiff's complaint. (Doc. 23). CT further represented that Plaintiff had

rejected a proposed protective order drafted by CT and had failed to suggest alternative language. (Docs. 23, 24).

Plaintiff failed to respond to either of CT's Motions for Extension of Time. However, the parties informed the Court at a status conference on February 25, 2008 that they had come to an agreement regarding the production of limited discovery. The parties' stipulation obligated CT to produce certain confidential documents specific to Plaintiff Brown Shoe and Defendant Westies within 21 days. If necessary, Plaintiff would seek leave to amend its complaint upon receipt of those documents. Plaintiff's counsel suggested that he would seek leave to amend within three weeks of receiving the documents. To the Court's knowledge, the parties' stipulation did not specify an agreed deadline for seeking leave, nor did the Court impose one. The stipulation provided that all other discovery requests would be abated until 30 days after a protective order had been entered and the Court had ruled on the pending Motion to Dismiss. The parties informed the Court that they were continuing to make efforts to agree on a protective order and would ask the Court for a ruling should they reach an impasse. In light of the foregoing, the Court notes that CT's Motions for Extension of Time as currently drafted are now moot.

Plaintiff filed its Motion for Leave to File First Amended Complaint on April 4, 2008. (Doc. 27). CT has since responded with its objections to Plaintiff's motion. (Doc. 30). As the motion is now ripe for ruling, the Court will address it herein.

### II.     Plaintiff's Motion for Leave to File First Amended Complaint

### A.     Standard of Review

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading with leave of court and instructs that "leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). This language "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)(quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002))(internal quotations omitted). A district court must possess a "substantial reason" for denying a motion for leave to amend pursuant to Rule 15(a); however, "leave to amend is by no means automatic." *Id.* (quoting *Lyn-Lea*, 283 F.3d at 286; *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994))(internal quotations omitted). Rather, "[d]ecisions concerning motions to amend are 'entrusted to the sound discretion of the district court.'" *Id.* (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)). In exercising such discretion, the court may consider a "variety of factors," including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Id.* (citing *Dussuoy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

### B.     Amendments to Plaintiff's Original Petition

Plaintiff's First Amended Class Action Complaint attached to its Motion for Leave does not amend its causes of action against Defendants CT and Westies. (Doc. 1, Ex. A-1 at 7-8; Doc. 27, Ex. A at 9-10). In addition, the parties are the same as those identified in Plaintiff's Original Class Action Petition. (Doc. 1, Ex. A-1 at 1-2; Doc. 27,

Ex. A at 1-2). In large part, the amendments consist of Plaintiff's attempt to clarify its factual allegations and substantiate its assertion of an injury to Plaintiff as a result of CT's actions. Plaintiff now claims that in response to its demands for payment of the debt owed by Westies, Plaintiff's attorney received a letter from CT which "ominously stated that '[i]n the event a workable payment schedule cannot be established, unsecured creditors [such as Plaintiff] stand to lose the entire amount owed to them.'" (Doc. 27, Ex. A at 3). Plaintiff claims that it has suffered an injury and is in imminent danger of suffering further injury because CT has told Plaintiff that it cannot collect its claim in full against Westies and must instead accept a lesser amount as a result of CT's scheme to shield Westies' assets. *Id.* at 4-5. According to Plaintiff, CT has frustrated, hindered, and/or delayed Plaintiff's ability to collect from Westies by claiming a security interest in all the cash and collateral of Westies and by making a claim upon and retaining nearly all such cash collateral received, thus rendering that money unavailable to creditors such as Plaintiff. *Id.* at 2-7. Plaintiff further alleges that as a practical matter, these barriers to recovery made it economically infeasible for Plaintiff and members of the putative class to recover the debts owed to them by CT's clients. *Id.* at 7.

In addition to amending Plaintiff's allegations of harm resulting from CT's actions, Plaintiff's amended complaint now asks to represent a national, as opposed to state-wide, class of creditors. *Id.* Alternatively, Plaintiff seeks to certify the class defined in Plaintiff's original petition as a sub-class of Texas creditors. (Doc. 1, Ex. A-1 at 5; Doc. 27, Ex. A at 7-8).

**C.     Analysis**

In opposing Plaintiff's Motion for Leave, CT relies on the factors of undue delay, bad faith or dilatory motive on the part of Plaintiff, and undue prejudice to CT should the Court allow leave to amend.  (Doc. 30).  No doubt given that the amended complaint represents Plaintiff's first amendment to its pleading, CT does not argue that Plaintiff has failed to cure deficiencies by amendments previously allowed.  *See id.*  CT further refrains from arguing that Plaintiff's proposed amendments are futile—that is, that the amended complaint would fail to state a claim upon which relief could be granted.  *See id.*; *see Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000)(courts apply same standard of legal sufficiency as applies under Rule 12(b)(6) to determine futility of amendment).  The Court recognizes that CT's Motion to Dismiss for lack of constitutional standing or, in the alternative, for failure to state a claim remains pending.  (Doc. 5).  In addition, the Court has indicated its willingness to allow CT to supplement its Motion to Dismiss in the event Plaintiff repleads.  The Court, therefore, will not interpret CT's lack of argument concerning futility as an indirect admission that Plaintiff's newly clarified allegations defeat CT's motion.  However, given that Plaintiff has confronted CT's asserted grounds for dismissal in its amended complaint, neither can the Court find that granting leave to amend would be futile.

In the recent case of *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007), the Fifth Circuit indicated that "undue delay" consists of "fail[ing] to take advantage of earlier opportunities to amend."  The court of appeals has also noted that "[m]ere passage of time need not result in refusal of leave to amend; on the contrary, it is only *undue* delay that forecloses amendment."  *Dussuoy v. Gulf Coast Inv. Corp.*, 660

F.2d 594, 598 (5th Cir. 1981)(emphasis added)(further stating that "[a]mendment can be appropriate as late as trial or even after trial"); *see also Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004)(delay alone is insufficient basis for denial of leave to amend). The court in *Dussuoy* explained that "at some point, the delay may be so long that the burden of persuasion shifts to the movant." *Dussuoy*, 660 F.2d at 598 n.2; *see also Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)(at some point, time delay becomes procedurally fatal, thus shifting burden to movant). However, this shift occurs "only if the delay imposes on the court, requiring it, for instance, to try the case on various theories seriatim, or if the delay presents the possibility of serious prejudice to the opponent." *Dussuoy, 660 F.2d at 598 n.2*; *accord Mayeaux, 376 F.3d at 427* (undue delay present where it prejudices nonmoving party and imposes unwarranted burdens on court). The Fifth Circuit has further indicated that delay in asking for leave to amend where the basis for the amendment is previously known can support the denial of a motion for leave on grounds of bad faith and dilatory motive. *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141 (5th Cir. 1993)(citing cases). In sum, where a party has delayed in requesting leave to amend, a finding of "undue" delay often depends upon further analysis of additional factors relevant to a court's Rule 15(a) determination.

Here, Plaintiff filed its Motion for Leave on April 4, 2008, several months after CT's removal of the case to this Court on September 9, 2007 and CT's filing of its pending Motion to Dismiss later that month. (Docs. 1, 5, 27). On November 7, 2007, the Court directed Plaintiff to amend its complaint by November 26, 2007 to address CT's grounds for dismissal. Plaintiff failed to do so, apparently due to an intervening discovery impasse for which both parties were responsible. (Docs. 23, 24). On February

25, 2008, the parties informed the Court that CT had agreed to produce limited discovery to Plaintiff, upon which Plaintiff could then seek leave to amend its complaint. CT claims in its response to the Motion for Leave that it provided this discovery to Plaintiff on March 4, 2008. (Doc. 30). As noted *supra*, Plaintiff's counsel suggested at the status conference that he would seek leave to amend within three weeks of receiving this discovery. Therefore, CT contends that the Court's deadline for requesting leave to amend expired on March 25, 2008. (Doc. 30). Plaintiff, however, represents in its motion that the Court directed Plaintiff to file its request for leave by April 4, 2008, the date Plaintiff filed its motion. (Doc. 27). Even if the Court had imposed a three-week deadline, a delay of a matter of days is not fatal to Plaintiff's motion. The Court recognizes that Plaintiff has delayed for a period of about five months from the date the Court originally indicated its willingness to allow Plaintiff to amend to the date Plaintiff filed its formal request for leave. However, standing alone, this delay does not defeat Plaintiff's motion.

CT appears to argue that Plaintiff's delay in requesting leave to amend was in bad faith, or done with dilatory motive, because Plaintiff "had in its possession all the facts necessary to include the proposed amended claims in the original complaint." (Doc. 30). In addition, CT claims that Plaintiff cannot provide an adequate explanation for its delay. *Id.* However, Plaintiff's delay appears to have resulted, at least in part, from the discovery impasse for which both parties were responsible and which both parties resolved by agreement. That agreement required CT to produce confidential documents related to Brown Shoe and CT only. A little over a month after the alleged receipt of these documents, CT requested leave to amend to assert more detailed allegations of

harm to Brown Shoe as a result of CT's actions. Given the above, the Court cannot say with assurance that Plaintiff had all the facts necessary to assert its amended allegations at the time it filed its original petition in state court.

In its Motion for Leave, Plaintiff claims that CT cannot claim prejudice as a result of Plaintiff's amended pleading with the "one exception" that Plaintiff has now alleged a national class. (Doc. 27). Consistent with this statement, CT does not argue that Plaintiff's amended factual allegations would prejudice CT but claims that it would be prejudiced by Plaintiff's attempt to expand the proposed class. (Doc. 30). The Fifth Circuit has indicated that a party opposed to amendment is prejudiced "if an added claim would require [it] 'to reopen discovery and prepare a defense for a claim different from the [one]…that was before the court.'" *Smith*, 393 F.3d at 596 (quoting *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)); *see also Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992)(affirming district court's denial of leave to amend where amended complaint "would have established an entirely new factual basis for the plaintiffs' claims and, consequently, would have required that the parties reopen discovery and alter their trial strategies."). Put another way, a court must ask whether the proposed amendment would unfairly prejudice the opposing party by denying it notice of the nature of the added claims against it. *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 245 n.2 (5th Cir. 1997)(indicating that amendment that "merely state[s] alternative legal theories for recovery on the same underlying facts" is not unduly prejudicial).

Here, CT has not been denied notice of the nature of the claims asserted against it in the amended pleading. Plaintiff, on behalf of the national class it now seeks to represent, is pursuing the same causes of action as asserted in Plaintiff's original petition.

In addition, Plaintiff has amended its factual allegations for the purpose of clarifying and substantiating its claims of harm to Brown Shoe as a result of CT's actions. It has not asserted an "entirely new factual basis" for its claims. The Court further notes that the parties have undertaken only limited discovery and no scheduling deadlines currently exist. In other words, the proposed expansion of the class would not require the parties to "reopen" discovery. In addition, class certification has not yet been requested or ruled upon. Even subsequent to certification, a class definition "may be altered or amended before the final judgment." *See* FED. R. CIV. P. 23(c)(1)(C). At this stage of the proceedings, CT will not be prejudiced by the geographical expansion of the proposed class where the underlying legal and factual issues remain the same.

### III.   Conclusion

For the foregoing reasons, the Court finds that no "substantial reason" exists for denying leave to amend. Therefore, the Court hereby **ORDERS** that Plaintiff Brown Shoe's Motion for Leave to File First Amended Complaint (Doc. 27) is hereby **GRANTED** and the District Clerk is instructed to file Plaintiff's First Amended Class Action Complaint (Doc. 27, Ex. A) with the papers in this cause. Defendant CT is instructed to supplement its pending Amended Rule 12(b) Motion to Dismiss (Doc. 5) to respond to the amended complaint or notify the Court that the motion as drafted is either moot or ripe for ruling. Also for the foregoing reasons, Defendant CT's Motions for Extension of Time (Docs. 23, 24) as drafted are now moot.

SO ORDERED this 20th day of May, 2008, at McAllen, Texas.

_____
Randy Crane
United States District Judge